IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MARION CRIGLER**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:08-0681 |
| ) | Judge Trauger |
| **GREG RICHARDSON**, *et al.*, ) | |
| ) | |
| Defendants, ) | |
| ) | |

___

| | |
|---|---|
| **GREG RICHARDSON**, *et al.*, ) | |
| ) | |
| Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| **GORDON & ASSOCIATES, CO. INC.**, *et al.* ) | |
| ) | |
| Third-Party Defendants. ) | |
| ) | |

### MEMORANDUM

Pending before the court are the Plaintiffs' Motion to Re-open the Depositions of Vanessa Harris and Shayne Harris (Docket No. 150) and a Motion to Dismiss filed by defendants Buzzi Unicem USA Inc. and Lone Star Industries, Inc. (Docket No. 196). For the reasons discussed herein, the motion to re-open the depositions will be denied, and the motion to

1

dismiss will be granted in part and denied in part.[1]

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the alleged improper disposal of construction debris and cement waste at a particular site in Whites Creek, Tennessee. (Docket No. 166 at 3.) In their Third Amended Complaint, the plaintiffs allege that the defendants have all been involved in using the site as an "illegal dump that collected pollutants and chemicals *discharging into a stream and pond* immediately down-grade of the site and onto the private property of Plaintiffs," causing substantial damage to the plaintiffs' property. (*Id.*)(emphasis added). Some defendants, known as the "Richardson Parties," have filed a third-party action and cross-complaint alleging that, "[t]o the extent that Plaintiffs [] prove that any of the violations, consequences, and damages set forth . . . occurred, said violations, consequences, and damages were committed, were proximately caused by, and are the responsibility of," a series of third-party defendants. (Docket No. 154 at 8.)

---

[1] Three additional motions are pending. First, defendant IMI Tennessee, Inc. (IMIT) has filed a Motion for an Extension of the Deadline for Identification and Disclosure of its Experts and their Reports (Docket No. 172). This motion is not opposed, and the court will, therefore, grant the motion and, as suggested in the motion, give IMIT 30 days from the date of the accompanying Order to identify and disclose its expert witnesses and their reports. Also pending is the plaintiffs' Motion for Leave to File Reply Brief and For Oral Argument on the Motion to Re-Open Depositions (Docket No. 177). The court will grant the motion to the extent that the court has reviewed and considered the proposed reply brief, which is attached to the motion. (Docket No. 177 Ex. 1.) The court concludes, however, as discussed herein, that re-opening the depositions is not appropriate and oral argument is not necessary. Finally, there is a Motion to Dismiss filed by third-party defendant Buzzi Unicem Ready Mix LLC ("Ready Mix") (Docket No. 195) in which Ready Mix claims that it has been brought into this litigation in error by the third-party plaintiffs. (Docket No. 195 at 2.) The parties are apparently working toward a potential resolution of this issue and, therefore, this motion remains unripe for decision. (*See* Docket No. 201.)

The Third Amended Complaint added defendants Buzzi-Unicem USA, Inc. and Lonestar Industries, Inc. (Docket Nos. 133 and 166.) The Third Amended Complaint alleges that, in 2006, at a cement facility and silo located at 1702 Second Avenue North in Nashville, Tennessee (the "Facility"), "Defendants Buzzi-UNICEM, USA Inc, and/or Lonestar Industries Inc. generated waste cement/mortar that could not be sold" and, therefore, they arranged for an individual named Tracy Simpson "to transport and dispose of the waste," and, eventually, "over a period of months," the waste was improperly disposed of in a way that adversely affected the plaintiffs' property. (Docket No. 166 at 9, 15-16.) That is, the waste "was dumped . . . onto and down [a] hillside. The waste became airborne, covered the land and trees, and it flowed into the stream at the bottom of the hill." (*Id.*)

As can be seen herein, additional relevant facts are best provided in conjunction with discussing the motions.

## ANALYSIS

**I.    Motion to Re-open Depositions**

On February 22, 2010, the plaintiffs took the depositions of defendant Shayne Harris, who is a principal at defendant S-Harris Construction, LLC, and Harris's mother, Vanessa Harris, who, at the deposition, testified that she assists her son with company business but is not a paid employee. (Docket No. 169 Ex. 2 at 8.)    After the depositions concluded and several uneventful days passed, on March 4, 2010, plaintiffs' counsel, Elizabeth Murphy, received a call on her cell phone from Ms. Harris. (Docket No. 151 Ex. 1.) Apparently, Murphy's cell phone could be obtained by calling her office number and listening to the outgoing message. (Docket

3

No. 151 at 2.)

In her affidavit, Murphy states that Ms. Harris "sounded agitated" and informed Murphy that neither she nor her son had not been honest in their depositions. (Docket No. 151 Ex. 1 at 2-2.) According to Murphy, Ms. Harris made repeated allusions to a desire to correct the transgressions that occurred during the depositions. (*Id.*) Murphy stated that, during the brief call, she did not provide any advice or seek additional detail but asked if Ms. Harris was still represented by David Scott (counsel for Mr. Harris and S-Harris Construction, collectively the "Harris defendants"), as she had been during the deposition. (*Id.*) After Ms. Harris confirmed that she was so represented, Murphy informed Ms. Harris that she (Ms. Harris) needed to talk to her counsel about the matter and that Murphy would be reporting this conversation to Scott and to the court. (*Id.*)

That day, Murphy sent Scott an e-mail and letter describing the situation and requesting Scott's "immediate attention" to the matter. (Docket No. 151 Ex. 2.) In the letter, Murphy expressed her confidence that Scott would appropriately address the matter but also questioned whether Scott could continue to ethically represent both Vanessa and Shayne Harris, in light of the fact that Shayne Harris had not clearly indicated that he would "do the right thing," as Vanessa Harris had promised to do. (*Id.*)

On March 5, 2010, Scott responded by letter. Scott stated that he was "somewhat concerned" that Murphy did not more quickly terminate the conversation with his client, although he conceded that "it is certainly plausible that Mrs. Harris could have continued talking while you were attempting to terminate the call." (Docket No. 151 Ex. 3.) In his letter, Scott

4

goes on to say that he had discussed the matter with Ms. Harris and, based upon his conversation with her, he was confident that Murphy had "misconstrued what Mrs. Harris was trying to say." (*Id.*) Also, Scott reminded Murphy that Ms. Harris was not present for her son's deposition and, therefore, would not be in the position to comment on it. (*Id.*) Scott concluded by stating that he would provide Shayne and Vanessa Harris with copies of their depositions to review so any corrections could be made, although he doubted that there would be any changes of significance. (*Id.*)

Dissatisfied with Scott's response, the plaintiffs filed the pending motion on March 12, 2010. (Docket No. 150.) The plaintiffs take "serious issue" with Scott's proposed solution to have the Harrises simply review the transcripts in light of the fact that Ms. Harris had expressly stated that she and her son had been dishonest in their depositions. (Docket No. 151 at 4.) The plaintiffs request that the court use its discretion to "order the Harrises to appear for deposition again so that Plaintiffs . . . can carefully question the Harrises to determine whether and to what extent the testimony they previously provided under oath [was dishonest] . . . and to determine exactly what Ms. Harris meant when she spoke to Ms. Murphy." (*Id.* at 5.)

As part of their response, the Harris defendants filed an affidavit from Ms. Harris. (Docket No. 169 Ex. 1.) In that document, Ms. Harris claims that she answered the questions "truthfully" during the deposition. (*Id.*) While she admitted calling Murphy, Ms. Harris claimed that she only did so because she was "concerned" about the litigation, but she "never told Ms. Murphy that [she] had testified dishonestly or that [she] did not tell the truth during the deposition." (*Id.*) She also disclaimed any knowledge of her son's deposition and stated that she

5

had not told Murphy that her son had testified dishonestly. (*Id.*) Ms. Harris claimed to have reviewed her deposition but only found a few (non-substantive) changes needed to be made, which are included on an errata sheet filed by the Harris defendants. (*Id.*)

In briefing, the Harris defendants accuse the plaintiffs of attempting to benefit from Murphy's professional misconduct, claiming that Murphy violated Tennessee professional conduct rules by not terminating the call immediately.[2] (Docket No. 169 at 5-6.) Next, the Harris defendants, in essence, accuse Murphy of lying in her affidavit, claiming that Ms. Harris's version of the facts is correct. (*Id.* at 6-7.) The Harris defendants argue that, in light of the breach of ethical duty, the factual dispute, and the errata sheet submitted by Ms. Harris, the court should simply disregard the entire incident and move on. (*Id.*) Finally, the Harris defendants argue that, if further depositions are permitted, they "will be required to conduct the deposition of Ms. Murphy, obtain her cell phone records to determine the duration of the call, and conduct any other discovery available to corroborate Ms. Harris' version of the conversation." (*Id.* at 7.)

The express purpose of the plaintiffs' proposed reply is to "answer" the "attack" "launched" by the Harris defendants in their response brief. (Docket No. 177 Ex. 1 at 2.) The

---

[2] Tennessee Rule of Professional Conduct 4.2 states that, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." The comments to that rule state that "[t]he Rule applies even though the represented person initiates . . . the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the communication is not permitted by this Rule." Obviously there is a dispute about how quickly Murphy terminated the call. That said, even assuming that the conversation went on a little longer than it perhaps ideally should have, the court refuses to view Murphy's conduct under the harsh glare of hindsight, assuming that she would not have had a copy of the comments to the rules readily available at the time she received the call.

6

plaintiffs also continue to stress that the phone call from Ms. Harris to Murphy "cannot be ignored" and "the only way" to resolve the concern about the truthfulness of the Harris defendants is to re-open the depositions. (*Id.*) The plaintiffs also contend that, because the key issue is clarifying the Harris defendants' deposition testimony, issues such as "exactly what happened on the call, how long the call lasted, or why Ms. Harris was upset when she called," are not relevant, and discovery and a deposition of Murphy are not appropriate. (*Id.* at 4.)

Federal Rule of Civil Procedure 30(a)(2)(ii) requires that a party "must obtain leave of court" to take the deposition of a deponent who has "already been deposed in the case." The court is to grant leave consistent with the guidelines of Rule 26(b)(2), which, in subsection (C), mandates that the court is to "limit the frequency or extent" of otherwise allowable discovery if, among other things, the "burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). The court has considerable discretion in this area, as the "scope of discovery is within the sound discretion of the trial court." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008)(internal quotation omitted).

The court concludes that any benefit from a second deposition of the Harris defendants would not be worth the "burden or expense of the proposed discovery." While the court has little doubt that Ms. Harris said things to Murphy during the call that rightly troubled Murphy, those comments have since been rejected. Ms. Harris, in her sworn affidavit, upon having reviewed her deposition testimony, has affirmed the truth thereof. While the plaintiffs, based upon Ms. Harris's call, may rightly question the veracity of the statements in the deposition and

7

in the affidavit, there is little indication that a subsequent deposition of the Harris defendants will advance the truth-seeking function of this proceeding. Indeed, the Harris defendants appear "dug in" to their position that the testimony offered in the initial depositions was entirely truthful. Further depositions would, in all likelihood, only increase the palpable hostility between the parties, result in increasingly outlandish discovery demands, and move this case further off course. Therefore, the plaintiffs' motion to re-open the depositions of the Harris defendants will be denied.

## II. Motion to Dismiss

### A. Buzzi Unicem USA Inc.'s Status

As noted above, defendants Buzzi Unicem USA Inc. and Lone Star Industries, ("Lone Star") have moved to dismiss, in whole or in part, the Third Amended Complaint. (Docket No. 196.) First, Buzzi Unicem USA Inc. ("Buzzi Inc.") argues that it was improperly sued, presumably due to confusion regarding similarly named entities. (*Id.* at 2.) That is, Buzzi Inc. claims that the Facility, which allegedly generated the waste that was disposed of improperly, is owned and operated by Lone Star, which does business as "Buzzi Unicem USA" in contrast to "Buzzi Unicem USA *Inc.*" (*Id.* at 2-3, 13.)

Buzzi Inc. supports this claim with the affidavit of David Rifkind. Mr. Rifkind states that there is a connection between Buzzi Inc. and Lone Star (for instance, Rifkind is the Vice President, Secretary and General Counsel of both), but Buzzi Inc. is entirely separate from Lone Star. That is, while Lone Star owns property in Tennessee and runs the Facility, Buzzi Inc. does not have any connection to Tennessee. Indeed, Buzzi Inc. is a Delaware company with its

8

headquarters in Pennsylvania, owns no property in Tennessee, and is not registered to do business in Tennessee. (Docket No. 196 at 6-7.)

Also attached to the motion to dismiss are (1) letters between counsel in this case, in which Buzzi Inc.'s counsel advises that Buzzi Inc. has been improperly sued, and (2) various tax statements and permits that indicate that Lone Star owns the Facility and does business as Buzzi Unicem USA. (*Id.* at 9-20.) In essence, while couched as a motion to dismiss for lack of personal jurisdiction, Buzzi Inc. moves to dismiss because it "had nothing to do with the events giving rise to this action [and] Plaintiffs should not have named Buzzi Inc. in this matter." (*Id.* at 22, 24.)

In response, the plaintiffs largely ignore Buzzi Inc.'s argument that it was improperly sued and blur the alleged distinction between these similarly named entities. (Docket No. 202 at 2.) That is, they argue that Buzzi Unicem USA exists, and, from the Buzzi Unicem USA website (screenshots of which are attached to their papers), it is clear that Buzzi Unicem USA has sufficient contacts with Tennessee to establish personal jurisdiction and, therefore, Buzzi Inc.'s Motion to Dismiss should be denied. (*Id.* at 2-6.) The obvious response to the plaintiffs' argument is that there is no dispute that there is personal jurisdiction over Lone Star, which, Buzzi Inc. claims, does business (and maintains a website) as Buzzi Unicem USA.

Clearly then, this issue is not about personal jurisdiction; it is about the corporate status of Buzzi Inc. That is, the plaintiffs cannot reasonably dispute that, if Buzzi Inc. is truly a Pennsylvania corporation with no ties to Tennessee or direct connection to this litigation, then it should not be a defendant. That said, in footnotes, the plaintiffs suggest that the corporate status

9

and relationships of Buzzi Inc. are unsettled. (Docket No. 202 at 2-4.) Resolving those issues is best accomplished on a motion for summary judgment and is not well suited to a Rule 12(b)(6) motion to dismiss, which is supposed to be resolved on the pleadings, while, here, the parties have filed internet screen-shots, assorted letters, and unauthenticated public records under the guise of a Rule 12(b)(2) motion. *See* Fed R. Civ. P. 12(d). The court will afford the parties the opportunity presented by the discovery period to resolve this corporate status issue.[3]

The remaining issue in this motion concerns the Third Amended Complaint's Clean Water Act claim (Count I). (Docket No. 196 at 2.) The defendants have moved to dismiss this claim under Fed. R. Civ. P. 12(b)(6). (*Id.*)

B. **Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of

---

[3]The court suspects that the defendants are correctly representing the relationship between Lone Star (d/b/a "Buzzi Unicem USA") and Buzzi Inc. and encourages the plaintiffs to consider whether it is in the interests of judicial economy to maintain this action against Buzzi Inc., particularly in light of the fact that Lone Star has conceded to owning and operating the Facility. Buzzi Inc. maintains that it has attempted to explain its corporate relationships to the plaintiffs and "has incurred unnecessary fees, costs and expenses in seeking to extricate itself from this litigation." (Docket No. 196 at 3.) If the plaintiffs insist on making Buzzi Inc. proceed with discovery and file a summary judgment motion on this issue, they should be sure that the record by that point supports their position more strongly than it does now.

10

the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

### B. Analysis

Count I of the Third Amended Complaint is a "citizen suit for violations of the Clean Water Act." (Docket No. 166 at 20.) In relevant part, the citizen-suit provision in the Clean Water Act states that "any citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of an effluent standard or limitation under this chapter . . . ." 33 U.S.C. § 1365(a). Generally, an "effluent standard" is a governmental or administrative regulation that controls waste water discharges into a body of water such the stream and pond at issue in this case. *See* Black's Law Dictionary 6th Ed. at 515; 33 U.S.C.§ 1362(11). The defendants here claim that the plaintiffs' Clean Water Act claim fails for three

11

reasons.

First, the only possible "effluent standard" implicated in the Third Amended Complaint is a permit issued to other defendants, that is, the "Plaintiffs have failed to allege that Buzzi Inc. and Lone Star have violated any effluent standard" through Lone Star's alleged provision of waste to Ms. Simpson in 2006. (Docket No. 196 at 29.) The defendants also argue that the plaintiffs have failed to allege that they were "directly involved in the alleged discharge of a pollutant into waters of the United States," as is required for liability under the citizen-suit provision of the Clean Water Act. (*Id.* at 9-10 citing *U.S. v. Thorson*, 2004 WL 737522, *6 (W.D. Wis. Apr. 6, 2004)). Finally, the defendants argue that, because the alleged violations of Lone Star and Buzzi Inc. are "wholly past," those alleged violations cannot properly form the basis of a citizen suit under the Clean Water Act. (*Id.* at 12-15 citing, among others, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 57 (1987)).

In response, the plaintiffs provide a detailed statutory argument in support of the proposition that any "unpermitted discharges of a pollutant" into U.S. waters constitute the violation of an "effluent standard" and that, "by contributing to and facilitating the discharge of pollutants to the waters of the United States without a permit," Lone Star and Buzzi Inc. have violated an effluent standard and, therefore and contrary to the defendants' second argument, have been "directly involved" in the discharge of a pollutant. (Docket No. 202 at 8-10.) As to the final point, while the plaintiffs concede that, under *Gwaltney*, a citizen suit cannot be maintained for "wholly past" violations of the Clean Water Act, the plaintiffs argue that "courts have struggled" to apply this "wholly past" doctrine and "the better reasoned cases" hold that

12

pollution is not "wholly past," "so long as material deposited in a water of the United States remains in those waters." (*Id.* at 11-12 citing *City of Mountain Park Georgia v. Lakeside at Ansley, LLC.*, 560 F. Supp.2d 1288 (N.D. Ga. 2008); *Hernandez v. Esso Standard Oil Co.*, 597 F. Supp.2d 272, 286 (D. P.R. 2009); *Umatilla Waterquality Protective Ass'n v. Smith Frozen Foods, Inc.*, 962 F. Supp. 1312, 1322 (D.Or. 1997)).

Whatever the merit of the plaintiffs "effluent standard" and "direct involvement" arguments, it is clear that, under the Sixth Circuit's interpretation of *Gwaltney*, the plaintiffs have alleged a "wholly past" violation of the Clean Water Act and, therefore, lack standing. In *Ailor v. City of Maynardville*, 368 F.3d 587 (6th Cir. 2004), the court held that, where the federal complaint was not filed until "several weeks" after the "last reported violation" of the effluent standard, the citizen plaintiffs asserted a "wholly past" violation and lacked standing unless the plaintiffs asserted that there were ongoing "continuous or intermittent violations" of the standard. *Id.* at 598-99.

Additionally, in an unpublished decision, the Sixth Circuit fully endorsed the Fourth Circuit's interpretation of a "wholly past" violation, finding that, to have standing, the citizen plaintiff must allege that the "violations [] continue[d] on or after the date the complaint is filed" or facts "from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Allen County Citizens for the Environment, Inc. v. BP Oil Co.*, 1992 WL 138410, *1-2 (6th Cir. June 18, 1992). District courts in this Circuit have also applied this definition of a "wholly past" violation, holding that a "historical" violation or a violation that is not "ongoing" cannot form the basis for citizen-suit relief. *See Frilling v. Honda*

13

*of Am. Mfg.*, 101 F. Supp.2d 841, 846-47 (S.D. Ohio 1998); *Pirgim Pub. Interest Lobby v. Dow Chem. Co.*, 1996 WL 903839, *6 (E.D. Mich. Sept. 25, 1996).

Again, the only specific allegation of misconduct against Lone Star and Buzzi Inc. here is that these defendants, in 2006, were involved in providing waste to an individual who eventually disposed of the waste in a manner that violated the Clean Water Act. (Docket No. 166 at 15-16.) There is, therefore, nothing in the Third Amended Complaint to indicate that these defendants were engaging in violations of the Clean Water Act after that 2006 incident, let alone at the time that the original Complaint was filed in 2008 or at the time that these defendants were sued in March 2010. Nor is there any suggestion from the Third Amended Complaint that any such violations by these defendants are "continuous or intermittent." Whatever the disagreement in the case law, a single alleged violation that occurred about four years prior to the institution of the litigation against the defendants must be considered a "wholly past" violation. Therefore, the court will dismiss Count I against Lone Star and Buzzi Inc.

## **CONCLUSION**

For the reasons expressed herein, the plaintiffs' motion to re-open the depositions of the Harris defendants will be denied. The Motion to Dismiss filed by Buzzi Inc. and Lone Star will be granted to the extent that Count I of the Third Amended Complaint will be dismissed as to those defendants but, with reluctance, the court will not dismiss Buzzi Inc. from this case altogether.

14

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge