# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARION CRIGLER,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08-681** |
| | ) | **Judge Trauger** |
| **GREG RICHARDSON,** *et al.***,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |

_____

| | |
|---|---|
| **GREG RICHARDSON,** *et al.***,** | ) |
| | ) |
| **Third-Party Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **GORDON & ASSOCIATES, CO. INC.,** *et al.* | ) |
| | ) |
| **Third-Party Defendants.** | ) |
| | ) |

## MEMORANDUM AND ORDER

Pending before the court is the plaintiffs' Motion for Reconsideration (Docket No. 208).[1]

_____

[1]Several defendants have also filed a Motion to Amend Case Management Order (Docket No. 219), seeking to allow them to file a supplement to Dr. Bowers' expert report, even though the Case Management Order dictates that expert reports were to have been filed by April 1, 2010. This supplement would discuss the effects of the historic rainfall in the Nashville, Tennessee area in early May 2010 on the property at issue in this case. (Docket No. 219 Ex. 1.) While the parties have not had a full opportunity to brief this motion, absent some compelling opposing argument, the court would be inclined to grant this motion and permit the supplementation in light of the (1) unique circumstances giving rise to the supplement, (2) the fact that the brief supplement only addresses one, narrow issue (the effect of the rains on the

1

For the reasons discussed herein, this motion will be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the alleged improper disposal of construction debris and cement waste at a particular site in Whites Creek, Tennessee.  (Docket No. 166 at 3.)  In their Third Amended Complaint, the plaintiffs allege that the defendants have all been involved in using the site as an "illegal dump that collected pollutants and chemicals *discharging into a stream and pond* immediately down-grade of the site and onto the private property of Plaintiffs," causing substantial damage to the plaintiffs' property.  (*Id.*)(emphasis added).

On June 3, 2010, the court issued a Memorandum that ruled on several pending motions in this case.  (Docket No. 204.)  One of those motions was a Motion to Dismiss filed by defendants Buzzi Unicem USA Inc. ("Buzzi Inc.") and Lone Star Industries, Inc. ("Lone Star").  (Docket No. 196.)  Buzzi Inc. argued that it had been improperly sued, and it has since been voluntarily dismissed without prejudice.  (Docket No. 210.)  Lone Star argued that, under Fed. R. Civ. P. 12(b)(6), Count I (Clean Water Act – CWA) of the plaintiffs' nine-count Third Amended Complaint (Docket No. 166) should be dismissed as to Lone Star because the plaintiffs had failed to state a CWA claim against Lone Star.  (*See* Docket No. 196 at 28-35.)

As discussed in the Memorandum, while the Third Amended Complaint contains lengthy and detailed allegations regarding improper disposal of waste by various specific defendants, the specific allegations against Lone Star are relatively narrow.  That is, while, at times, the

---

property), and (3) the fact that the parties have not taken Bowers' deposition, and, therefore, he can be deposed on the supplement without additional difficulty.  (Docket No. 220 at 3.)

2

Complaint vaguely refers to the general conduct of "defendants," as to Lone Star, the only specific allegation is that, in 2006, at a cement facility and silo located at 1702 Second Avenue North in Nashville, Tennessee, Lone Star "generated waste cement/mortar that could not be sold" and, therefore, it arranged for an individual named Tracy Simpson "to transport and dispose of the waste," and, eventually, "over a period of months," the waste was improperly disposed of in a way that adversely affected the plaintiffs' property. (Docket No. 166 at 9, 15-16.) That is, the waste "was dumped . . . onto and down [a] hillside. The waste became airborne, covered the land and trees, and it flowed into the stream at the bottom of the hill." (*Id.*)

Lone Star moved to dismiss the CWA claim on a few grounds, including that there was no indication that Lone Star was "directly involved" in the alleged discharge of pollutants into a body of water and that any violation of the CWA was "wholly past" and, therefore, under settled Supreme Court authority, not actionable. (Docket No. 196 at 29-35.) In response, the plaintiffs challenged these arguments, arguing that the "Third Amended Complaint adequately alleges that . . . Lone Star . . . caused or contributed to the improper discharges" and that they did not allege a "wholly past" violation of the CWA. (Docket No. 202 at 8-13.)

In evaluating the parties' arguments, the court recognized that what constitutes a non-actionable "wholly past" violation is somewhat unsettled, and, while there was not a wealth of Sixth Circuit case law on the issue, the most reasonable reading of a pair of Sixth Circuit cases (as well as district court cases in this Circuit) indicated that the violation alleged here against Lone Star was "wholly past." That is, a "single alleged violation that occurred about four years

prior to the institution of the litigation against [Lone Star] must be considered a 'wholly past' violation." (Docket No. 204 at 14.) On this basis, the court dismissed Count I against Lone Star.

Just six days later, the plaintiffs filed their Motion for Reconsideration with a 17-page Memorandum in support. (*See* Docket No. 209.) The plaintiffs claim that the court was operating under "a misapprehension of what the Complaint alleges to be Defendants' violations of the Clean Water Act" and that "that misapprehension caused the Court to dismiss Count I of the Complaint on the ground that it alleged 'wholly past' violations of the Clean Water Act." (*Id.* at 2.) Lone Star responded timely on June 25, 2010.

## ANALYSIS

### I.      Standard of Review

The plaintiffs omitted the standard of review that the court is to apply in evaluating a motion for reconsideration. The plaintiffs only state that they "recognize and believe that such motions should be reserved for exceptional circumstances." (Docket No. 209 at 1.) Then, the plaintiffs argue that, because, in their view, the court misapprehended their Complaint allegations, such an "exceptional circumstance" has arisen. (*Id.* at 2.)

To be clear, the Sixth Circuit has recognized that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). While district courts have "significant discretion" in deciding motions for reconsideration, "[t]raditionally, courts will find justification for reconsidering interlocutory

4

orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 Fed. Appx. at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

## II.     The Motion for Reconsideration

### A.     The Plaintiffs' Argument

As they did in the previous round of briefing, the plaintiffs contend that the Third Amended Complaint alleges that there are two sources of ongoing contamination in the relevant bodies of water. That is, (1) the defendants continue to actively dump materials and debris (pollutants) into the water ("active dumping" issue) and (2) materials and debris that have been previously dumped into the water "continue to release harmful substances" into the water ("previous dumping" issue). (Docket No. 209 at 2; Docket No. 202 at 11-12.)

Also, as they did before, the plaintiffs argue that the court should focus on their allegation that the pollution (from both sources) is continuing, rather than focusing on when Lone Star's conduct took place. (Docket No. 209 at 3-4; Docket No. 202 at 12.) That is, "while the acts and omissions occurred in 2006, the resulting violations continue to this day." (Docket No. 209 at 7.)

On the "active dumping" issue, the plaintiffs provide case law (not provided in the initial briefing) that they claim demonstrates that actionable pollutant "discharges giving rise to a [CWA] citizen suit can be removed in time, even far removed in time, from the acts and omissions that give rise to them." (*Id.*) For instance, in *Hudson River Fishermen's Ass'n v. Arcuri*, 862 F.Supp. 73, 76-78 (S.D.N.Y. 1994), the court found that real estate developers who

5

started work on a site and then abandoned it, only to have pollutants run from the site into the river, had CWA liability.

Also, in a criminal proceeding in the Ninth Circuit, the court found that the Government had proven a CWA violation, even though the Government had only shown that the defendant, through operating heavy equipment in a dry stream, had caused an eventual discharge of pollutants into a body of water. *United States v. Moses*, 496 F.3d 984, 991 (9th Cir. 2007). And in *N.C. Growers Ass'n v. Holly Ridge Assoc.*, 278 F. Supp.2d 654, 675-76 (E.D.N.C. 2003), the court indicated that the construction of ditches that eventually led to the discharge of pollutants was actionable. The plaintiffs argue that "these cases illustrate why the Court should have focused on the discharges that resulted and continue to result from Defendants' past acts and omissions, rather than on Defendants' acts and omissions." (Docket No. 209 at 9.)

Next, the plaintiffs turn to the "previous dumping" issue. That is, they argue that, even if the Complaint had alleged that all of the "mortar" and other debris had been discharged into the water in 2006, the Complaint would still allege a "continuing violation of the Clean Water Act because the mortar remains in those waters and continues to cause harm." (*Id.* at 10.)

As they did previously, the plaintiffs recognize that courts have come to differing conclusions as to whether a defendant has liability under the CWA if the dumping of the pollutant has stopped but "the material remains in the water and continues to release pollutants downstream." (*Id.* at 11.) The plaintiffs repeat their previous argument that *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 57 (1987), which established the "wholly past" limitation, actually supports their view because the *Gwaltney* court focused on

6

the value of the citizen suit provision of the CWA as a tool to gain "abatement" of water pollution.  (*Id.* at 11.)  Again, in the plaintiffs' view, as long as the past dumping is still causing some pollution, the violation cannot be "wholly past."  (*Id.* at 12.)

In the Memorandum, the court cited two Sixth Circuit cases and three other district court cases in support of the proposition that the plaintiffs were alleging a "wholly past" (and, therefore, not actionable) violation of CWA.  (Docket No. 204 at 14-15.)  For instance, the court cited an unpublished Sixth Circuit case in which that court adopted the Fourth Circuit's approach to the issue.  That is, a violation is "wholly past" unless the citizen plaintiff alleges that the "violations [] continue[d] on or after the date the complaint is filed" or facts "from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations."  *Allen County Citizens for the Environment, Inc. v. BP Oil Co.*, 1992 WL 138410, *1-2 (6th Cir. June 18, 1992).  Again, in light of this and similar case law, and the fact that the plaintiffs had only alleged one specific act of pollution on the part of Lone Star, with no indication that the pollution was going to recur, the court concluded that the violation alleged was "wholly past."  (Docket No. 204 at 14.)

The plaintiffs argue that this case law is unhelpful and not controlling because it "offers no analysis of whether a situation such as this one constitutes an ongoing violation."  (Docket No. 209 at 13-14.)  The plaintiffs, again, recognize that "courts have split on the issue of whether a defendant" is subject to a citizen suit under the CWA "if the defendant has completed a discharge of pollutants into waters of the United States but those materials . . . remain in the water."  (*Id.* at 14.)  The plaintiffs simply re-assert that the cases that support their view are

7

"better reasoned" and more consistent with the remedial purposes of the CWA than those cases that bar recovery for such pollution. (*Id.* at 15-16.)

In response, Lone Star argues that the newly presented "active dumping" cases are not applicable. That is, because of clear factual and procedural distinctions, the issue of what constituted a "wholly past" violation never arose in those cases. (Docket No. 216 at 4-5.) Next, Lone Star returns to case law that it provided in its initial motion to dismiss and argues, again, that these cases show that, "once the defendants' actions have ceased, there is no ongoing violation for purposes of the Clean Water Act's citizen's suit."[2] (*Id.* at 7.)

## B.      Resolution

To survive a Motion to Dismiss, the plaintiffs' allegations against a particular defendant on a particular claim must be "facially plausible." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). As indicated in the Memorandum, the "active dumping" theory as to Lone Star is not "facially plausible." That is, the only specific allegation against Lone Star is that, at some point in 2006, Lone Star turned over some waste to Tracy Simpson, who took the waste from the Lone

---

[2]*See Conn. Coastal Fisherman's Ass'n v. Remington Arms*, 989 F.2d 1305, 1313 (2nd Cir. 1993)("the present violation requirement of the Act would be completely undermined if a violation included the mere decomposition of pollutants."); *Aiello v. Brookhaven*, 136 F. Supp.2d 81, 120 (E.D.N.Y. 2001)(finding that the CWA does not sanction "ongoing contamination by past polluters"); *Wilson v. Amoco Corp.*, 33 F. Supp.2d 969, 975-76 (D.Wyo. 1998)("migration of residual contamination from previous releases does not constitute an ongoing discharge, and [] to so hold would undermine the CWA's limitations as set forth in . . . the Supreme Court's holding in *Gwaltney*."); *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1354 (D.N.M. 1995)("Migration of residual contamination resulting from previous releases is not an ongoing discharge within the meaning of the Act.")

Star site and, over a period of months, dumped the waste in such a way that it flowed into the relevant bodies of water, thereby polluting them. Other than cursory and vague allegations that "all defendants" continue to pollute, there is nothing in the Third Amended Complaint to suggest that Lone Star's role in actively dumping material into the relevant bodies of water went beyond the one incident in 2006 and nothing in the Third Amended Complaint to suggest that Simpson was actively dumping Lone Star's waste into the body of water at the time that the case was instituted against Lone Star. The new cases provided by the plaintiffs are not controlling and are readily distinguishable on their facts. Therefore, once again, the court rejects the plaintiffs' "active dumping" argument.

As to the "previous dumping" issue, again, there is a split of authority on this issue. That is, as the plaintiffs pointed out in initial briefing and again here, some courts have indicated that "so long as material deposited in a water of the United States remains in those waters," the violation is not wholly past. (Docket No. 202 at 11-12 citing *City of Mountain Park Georgia v. Lakeside at Ansley, LLC.*, 560 F. Supp.2d 1288 (N.D. Ga. 2008); *Hernandez v. Esso Standard Oil Co.*, 597 F. Supp.2d 272, 286 (D. P.R. 2009); *Umatilla Waterquality Protective Ass'n v. Smith Frozen Foods, Inc.*, 962 F. Supp. 1312, 1322 (D.Or. 1997)). And, several courts have concluded that, once the polluter ceases his active pollution, the violation is wholly past.

In this context, the court looked for guidance from the Sixth Circuit and other district courts in this Circuit. While neither side came forward with direct Sixth Circuit authority, all indications from the Sixth Circuit cases cited in the Memorandum are that, if the Sixth Circuit were to consider this exact issue, it would find that the plaintiffs alleged a "wholly past"

violation. That is, again, in both *Allen County* and *Ailor v. City of Maynardville*, 368 F.3d 587, 598 (6th Cir. 2004), the Sixth Circuit focused on the defendants' conduct and whether the defendants were actively polluting at the time that the Complaint was filed, and the court did not focus on any possibility that the defendant would be liable under the CWA for the consequences of active pollution that had ceased by the time that the Complaint had been filed.

Plainly this is an issue about which reasonable minds could, and have, differed. The court considered the arguments of the parties and rendered a decision based upon its interpretation of controlling authority in light of the facts alleged. The fact that the plaintiffs disagree with that decision is not unusual and it certainly does not indicate that this is an "exceptional circumstance." Nor are any of the traditional bases that justify the filing of a motion for reconsideration, such as new evidence or clear error, present here. The plaintiffs' Motion for Reconsideration (Docket No. 208) is **DENIED**.

It is so Ordered.

ENTER this 7th day of July 2010.

ALETA A. TRAUGER
United States District Judge

10